# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHESTER TSANG, On behalf of Himself and all others similarly situated, | ) ) ) | Civil Case No. 07-CV-8706-JGK |
| Plaintiff, | ) ) | ECF CASE |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| LDK SOLAR CO., LTD., XIAOFENG PENG, XINGXUE TONG, LIANGBAO ZHU, YONGGANG SHAO, GANG WANG, JACK LAI and QUQUANG YAO, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | | |

Plaintiff, Chester Tsang ("Plaintiff") individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things: (i) a review of the public documents and announcements made by defendants; (ii) Securities and Exchange Commission ("SEC") filings made by defendants; (iii) an analysis of publicly-available news articles and reports; (iii) press releases issued by defendants; and (iv) other matters of public record.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of LDK Solar Co., Ltd. ("LDK" or the "Company") between June 1, 2005 and October 2, 2005, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      During the Class Period, LDK made false and misleading statements regarding its polysilicon inventory levels and controls.  Polysilicon is the key ingredient of the Company's product -- multicrystalline solar wafers.  When the market found out that there was a discrepancy between the Company's announced, and actual polysilicon inventory, the Company's share price fell by approximately 25%.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U. S. C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") (17 C. F. R. § 240.10b- 5).

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U. S. C. § 78aa).

5.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

6.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

7.    Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased LDK common stock during the Class Period and was damaged thereby.

8.    Defendant LDK is a corporation organized under the laws of the Cayman Islands with its principal executive offices located at High-Tech Industrial Park, Xinyu City, Jiangxi, China.  LDK describes itself as a manufacturer of multicrystalline solar wafers.  LDK securities are listed on the New York Stock Exchange ("NYSE")

9.    Defendant Xiaofeng Peng ("Peng") served, at all relevant times, as LDK's Chief Executive Officer and the Chairman of its Board of Directors.

10.    Defendant Xingxue Tong ("Tong") served, at all relevant times, as LDK's President, Chief Operating Officer and a member of the Board of Directors.

11.    Defendant Liangbao Zhu ("Zhu") served, at all relevant times, as LDK's Senior Vice President and a member of the Board of Directors.

12.    Defendant Yonggang Shao ("Shao") served, at all relevant times, as LDK's Senior Vice President and a member of the Board of Directors.

13.    Defendant Gang Wang ("Wang") served, at all relevant times, as a member of LDK's Board of Directors.

14.    Defendant Jack Lai ("Lai") served, at all relevant times, as LDK's Executive Vice President, Chief Financial Officer and Authorized Representative in the United States.

15.    Defendant Qiqiang Yao ("Yao") served, at all relevant times, as LDK's Assistant President and Principal Accounting Officer.

- 3 –

16.    Defendants Peng, Tong, Zhu, Shao, Wang, Lai and Yao will sometimes be referred to hereinafter collectively as the "Individual Defendants".

17.    Defendants Peng, Tong, Zhu, Shao, Wang, Lai and Yao shall collectively be known as the "Securities Act Defendants."

18.    Defendants Peng, Tong and Lai shall collectively be known as the "Exchange Act Defendants."

19.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

20.    Each of the above officers of LDK, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being

issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

21.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act; and is traded on the New York Stock Exchange ("NYSE"); and is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

22.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with LDK, each of the Individual Defendants had access to the adverse undisclosed information about LDK's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or

about LDK and its business issued or adopted by the Company materially false and misleading.

23.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

24.    With respect to the Securities Act claims, each of the Securities Act Defendants owed to the purchasers of LDK common stock, including Plaintiff and other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the July 2007 Registration Statement issued in connection with the IPO.  This duty included performing an appropriate investigation to ensure that the statements contained therein were true, and that there were no omissions of material fact required to be stated in order to make the statements contained therein not misleading.  As herein alleged, each of the Securities Act Defendants violated these specific duties and obligations.  As a result of these violations, the IPO price of LDK common stock was artificially inflated.

25.    With respect to the Exchange Act claims, each of the Exchange Act Defendants is liable as a participant in a fraudulent scheme and course of business that

operated as a fraud or deceit on the Class by disseminating materially false and misleading statements and/or concealing material adverse facts. The Exchange Act Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on the Class: (i) deceiving the investing public regarding LDK's prospects, business, operations, management and the intrinsic value of LDK's common stock; (ii) artificially inflated the price of LDK common stock; and (iii) caused Plaintiff and other members of the Class to purchase or otherwise acquire LDK common stock at artificially inflated prices.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of LDK between June 1, 2007 and October 2, 2005, inclusive, and who were damaged thereby. Excluded from the Class are the Company, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which the Company has or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by LDK or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendant's wrongful conduct in violation of federal law as complained of herein.

29.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether statements made by defendants to the investing public during the Class Period misrepresented or omitted material facts about the business, operations and management of LDK;

b.    whether the federal securities laws were violated by defendants' acts as alleged herein and harmed the members of the Class; and

c.    to what extent the members of the Class have sustained damages and the proper measure of damages.

d.    Whether the May 11, 2007 Registration Statement filed with the SEC in connection with the IPO contained misstatements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

e.    Whether each of the Securities Act Defendants had a duty to make a reasonable and diligent investigation of the statements contained in the

Registration Statement filed with the SEC in connection with the IPO at the time it became effective, but failed to do so;

f.   Whether the price of LDK's common stock was artificially inflated due to the non-disclosures and misstatements complained of herein.

31.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CLAIMS UNDER THE EXCHANGE ACT

**SUBSTANTIVE ALLEGATIONS**

32.   LDK describes itself as a manufacturer of multicrystalline solar wafers, which are thin sheets of crystalline silicon material primarily made by slicing multicrystalline ingots or monocrystalline boules. Solar wafers are the principal raw material used to produce solar cells, which are devices capable of converting sunlight into electricity. LDK sells multicrystalline wafers globally to manufacturers of photovoltaic products, including solar cells and solar modules. In addition, LDK provides wafer processing services to monocrystalline and multicrystalline solar cell and module manufacturers.

33.   According to its June 1, 2007 IPO Prospectus, the Company manufactures the multicrystalline ingots from polysilicon feedstock. In addition to using solar-grade virgin polysilicon, LDK also uses other polysilicon materials from various sources. The Company also purports to have developed proprietary production

- 9 –

processes for the use of polysilicon scraps and recyclable polysilicon in manufacturing the ingots. In addition, LDK also sells polysilicon materials, which include ingots and polysilicon scraps.

34.     Additionally, according to its June 1, 2007 IPO Prospectus, as of March 31, 2007, LDK had an annual multicrystalline wafer production capacity of approximately 215 megawatts "MW."  Further, the Company stated that:

> We have entered into contracts to purchase additional equipment that is expected to be sufficient for our planned expansion to approximately 400 MW by the end of 2007 and approximately 600 MW by mid-2008. We intend to continue to increase our annual production capacity to approximately 800 MW by the end of 2008. However, we currently do not have contractual commitments for all the equipment necessary for the expansion of our production capacity beyond 600 MW.
>
> Despite the current industry-wide shortage of polysilicon, **we have inventory and commitments from suppliers that we believe will satisfy over 90% of our estimated requirements through the end of 2007 and approximately 50% of our estimated requirements for 2008**. Many of our polysilicon supply agreements are subject to fluctuating market prices or price negotiations with our suppliers. The majority of our polysilicon feedstock consists of polysilicon scraps and recyclable polysilicon. In addition to polysilicon scraps and recyclable polysilicon, we also use virgin polysilicon for our polysilicon feedstock. We have purchased polysilicon scraps and recyclable polysilicon from semiconductor materials trading companies, including Komex Inc., or Komex, Kunical International Group Ltd., or Kunical, and Prime GLP Inc., or Prime. We have also purchased virgin polysilicon from virgin polysilicon manufacturers. In addition, some of our major customers, including Canadian Solar Inc., or CSI, and Q-Cells AG, or Q-Cells, have supplied us with polysilicon feedstock. We also source polysilicon feedstock from the spot market from time to time depending on the price and our requirements.

35.     Subsequent to its IPO, LDK announced, in a press release dated July 20, 2007, entitled "LDK Solar Signs Contract to Purchase Polysilicon Production Equipment from GT Solar" that it had signed a contract to purchase polysilicon production equipment from U.S.-based GT Solar Incorporated.  LDK stated in this press

- 10 –

release that "We expect that, following the installation of such equipment, we will have polysilicon production capacity of up to 6,000 metric tons in 2008 and 15,000 metric tons in 2009."  In this press release, Defendant Peng stated that "Through the purchase of this equipment, we are expanding our capabilities in the solar value chain, adding the production of pure polysilicon to our operations, …  In combination with our ability to use recyclable polysilicon in our production process, producing our own pure polysilicon feedstock will enhance our cost efficiencies."

36.    In a press release dated July 26, 2007, entitled "LDK Solar Expands 2009 Production Capacity to 1,600 MW," LDK announced that it had secured additional contracts for production equipment that would enable it to expand wafer production capacity to 1,600 MW by the end of 2009.  In this press release, Defendant Peng stated "By securing this equipment, we will be able to execute our plans to double our production capacity annually through 2009, in order to address the strong demand for solar wafers.  These agreements represent another key step towards fulfilling our vision to become the largest and lowest cost producer in the solar wafer industry."

37.    In a press release dated September 24, 2007, entitled LDK Solar Signs Wafer Sales and Equipment Purchase Agreements with Sunways AG", LDK announced that it had signed contracts to supply multicrystalline solar wafers and to purchase polysilicon production equipment from Sunways AG. "The equipment purchase agreement with Sunways AG further bolsters our confidence in LDK Solar's ability to meet the goal of ramping polysilicon production in 2008," commented Defendant Peng, "We are pleased to continue to build our infrastructure by securing readily available polysilicon reactors from Sunways to serve as an additional training resource for our

engineers and operators as we ready our facilities for polysilicon production of our previously announced 15,000 ton polysilicon plant. With this new additional project, we expect to raise our polysilicon capacity to 7,000 tons by the end of 2008 and 16,000 tons by the end of 2009."

38.    The statements contained in ¶¶ 33-37 above were each materially false and misleading when made, for the following reasons, among others:

a.    Unbeknownst to the public, there was a discrepancy between the announced and actual levels of polysilicon inventory.  This cast into doubt the Company's ability to manufacture product, since polysilicon is the key ingredient of multicrystalline solar wafers.

39.    The Exchange Act Defendants knew the actual polysilicon inventory levels at the time the statements that the Company had adequate inventory levels were made.

**The Truth Begins to Emerge**

40.    On October 3, 2007, LDK stock fell almost 25 percent, from $68.31 per share to $51.65 per share after a report its financial controller had left the company after making allegations of poor controls and an inventory discrepancy.  In a research note, Piper Jaffray & Co. said "We are also aware of the former controller's allegations of poor financial controls and a 250-tonne inventory discrepancy."  Piper Jaffray further said the allegations were made to both the Securities and Exchange Commission and the external auditor KPMG.

41.    The following day, on October 4, 2007, LDK issued a press release which stated as follows:

A few days ago, a former financial staff member of LDK, Charley Situ, who was terminated for cause on September 25, 2007, sent email letters to

- 12 –

LDK's management and others subsequent to his termination alleging inconsistencies in LDK's inventory reporting. Mr. Situ was originally hired as a Financial Controller in March, 2007, reporting to Qiqiang Yao, LDK's Vice President and Chief Accounting Officer, who reports to Jack Lai, Executive Vice President and Chief Financial Officer. In response to the allegations and in accordance with instructions of the board of directors, LDK's management team and board of directors formed an internal committee to investigate the allegations and conduct an immediate physical inventory of LDK's polysilicon materials. The management team found no material discrepancies as compared to LDK's financial statements. The management team believes that these allegations have no merit. Additionally, the Audit Committee has asked an independent auditing firm to conduct a separate, independent engagement on LDK's inventory. These findings are expected to be disclosed after the completion of the review and consideration of the Audit Committee. LDK has not been contacted by any regulatory authority regarding this matter.

42.     However, later that same day, Piper Jaffray issued a comment which stated:

> Today LDK issued a statement that its financial controller was released for cause on 9/25 and an internal committee found no material discrepancies and that the allegations are without merit. Additionally, its Audit Committee has asked an independent auditing firm to conduct a review**. On 10/4 LDK management conducted an investor call through a competitor. LDK management did confirm that the financial controller raised concern via email prior to his departure from the company. While the company defends its financials and inventory, we believe the investor call may have raised more questions then it answered. Also the CEO was not on the call.**

(Emphasis original.)

**Loss Causation/Economic Loss**

43.     During the Class Period, as detailed herein, the Exchange Act Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated LDK's stock price and operated as a fraud or deceit on Class Period purchasers and/or acquirers of LDK's stock by misrepresenting the Company's inventory and controls during the Class Period.  The Exchange Act Defendants created LDK's façade

of success, growth and strong future business by making false statements about the level of polysilicon inventory controlled by the Company.

44.     By misrepresenting LDK's polysilicon inventory levels during the Class Period, the Exchange Act Defendants presented a misleading picture of LDK's business condition and prospects.  Instead of truthfully disclosing during the Class Period that LDK's polysilicon inventory levels were not as high as represented through its SEC filings and press releases, the Exchange Act Defendants caused LDK to falsely report inventory levels that did not accurately reflect the true inventory of LDK.

45.     As investors and the market became aware that announcements concerning LDK's polysilicon inventory levels were false and misleading, the prior inflation came out of LDK's stock price, thereby damaging Plaintiff and other Class members.   LDK common stock began trading at approximately $27.20 per share after its IPO, soaring to a high of $73.95 during the Class Period.  Without LDK's misleading announcements concerning polysilicon inventory levels, LDK's stock would have never opened at $27.20 per share, nor rose to a high of $73.95 during the Class Period.

46.     As a direct result of the Exchange Act Defendants' admissions and the public revelations regarding the truth about LDK's polysilicon inventory levels during the Class Period, LDK's stock price declined in the face of disclosures by the Company.

47.     On October 3, 2007, LDK stock fell almost 25 percent, from $68.31 per share to $51.65 per share on extremely high trading volume after a report its financial controller had left the company after making allegations of poor controls and an inventory discrepancy.

48.    The decline in LDK's stock price at the end of the Class Period was a direct result of the nature and extent of the Exchange Act Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of LDK's stock price declines negate any inference that the loss suffered by Plaintiff or the other members of the Class was caused by changing market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Exchange Act Defendants' fraudulent conduct.

**Undisclosed Adverse Information**

49.    The market for LDK's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, LDK's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired LDK common stock relying upon the integrity of the market price of LDK's common stock and the market information relating to LDK, and have been damaged thereby.

50.    During the Class Period, the Exchange Act Defendants materially mislead the investing public thereby inflating, and kept inflated, the price of LDK's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make the Exchange Act Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

51.     At all relevant times, the material misrepresentations and omissions particularized in the Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiffs and other members of the Class.  As described herein, during the Class Period, the Exchange Act Defendants made or caused to be made a series of materially false or misleading statements about LDK's business, prospects, and operations.   These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of LDK and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.

52.     The Exchange Act Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

53.     The undisclosed adverse information concealed by the Exchange Act Defendants during the Class Period is the type of information which because of SEC regulations, regulations of national stock exchanges and customer business practices, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

**Applicability of the Presumption of Reliance: Fraud-on-the-Market Doctrine**

54.     At all relevant times, the market for LDK common stock was an efficient market for the following reasons, among others:

(a)    LDK's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, LDK filed periodic public reports with the SEC and NYSE;

(c)    LDK regularly communicated with public investors *via* established market communication and mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

55.    As a result of the foregoing, the market for LDK common stock promptly digested current information regarding LDK from all publicly-available sources and reflected such information in LDK's stock price.    Under these circumstances, all purchasers of LDK common stock during the Class Period suffered similar injury through their purchase of LDK common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

56.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the alleged false statements pleaded in this Complaint.    Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.    To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those purportedly forward-looking statements.    Alternatively, to the extent that statutory safe harbor does apply to any forward-looking statements pleaded herein, the Exchange Act Defendants

- 17 –

are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of LDK who knew that those statements were false when made.

## CLAIMS UNDER THE SECURITIES ACT

**Substantive Allegations**

57.    On May 11, 2007, the Company filed its Registration Statement with the SEC.  LDK's Registration Statement became effective on May 31, 2004.  The Company filed its Prospectus with the SEC on June 1, 2007.  Both the May 2007 Registration Statement and the June 2007 Prospectus are referred to collectively herein as the "Registration Statement" or the "May 2007 Registration Statement."

58.    The Company's IPO consisted of 13,392,100 American depositary shares of LDK common stock with shareholders selling an additional 3,991,900 American depository shares, for a total number of 17,384,000 registered shares, offered at an initial price of $27.000.  Morgan Stanley, UBS Investment Bank, Piper Jaffray, CIBC World Markets and CLSA Asia-Pacific Markets were the underwriters participating in the Company's IPO.

59.    In its May 11, 2007 Registration Statement, LDK stated that

As of March 31, 2007, we had an annual multicrystalline wafer production capacity of approximately 215 megawatts, or MW. We intend to continue to increase our annual production capacity to approximately 400 MW by the end of 2007 and approximately 800 MW by the end of 2008. We have entered into contracts to purchase additional equipment that is expected to be sufficient for our planned expansion to approximately 400 MW by the end of 2007 and approximately 600 MW by mid-2008. We currently do not have contractual commitments for all the equipment necessary for the

expansion of our production capacity beyond 600 MW to approximately 800 MW by the end of 2008.

Despite the current industry-wide shortage of polysilicon, we have inventory and commitments from suppliers that we believe will satisfy over 90% of our estimated requirements through the end of 2007. The majority of our polysilicon feedstock consists of polysilicon scraps and recyclable polysilicon. In addition to polysilicon scraps and recyclable polysilicon, we also use virgin polysilicon for our polysilicon feedstock. We have purchased polysilicon scraps and recyclable polysilicon from semiconductor materials trading companies, including Komex Inc., or Komex, Kunical International Group Ltd., or Kunical, and Prime GLP Inc., or Prime. We have also purchased virgin polysilicon from virgin polysilicon manufacturers. In addition, some of our major customers, including Canadian Solar Inc., or CSI, and Q-Cells AG, or Q-Cells, have supplied us with polysilicon feedstock. We also source polysilicon feedstock from the spot market from time to time depending on the price and our requirements.

60.    On October 3, 2007, LDK stock fell almost 25 percent, from $68.31 per share to $51.65 per share after a report its financial controller had left the company after making allegations of poor controls and an inventory discrepancy.  In a research note, Piper Jaffray & Co. said "We are also aware of the former controller's allegations of poor financial controls and a 250-tonne inventory discrepancy."  Piper Jaffray further said the allegations were made to both the Securities and Exchange Commission and the external auditor KPMG.

61.    The following day, on October 4, 2007, LDK issued a press release which stated as follows:

A few days ago, a former financial staff member of LDK, Charley Situ, who was terminated for cause on September 25, 2007, sent email letters to LDK's management and others subsequent to his termination alleging inconsistencies in LDK's inventory reporting. Mr. Situ was originally hired as a Financial Controller in March, 2007, reporting to Qiqiang Yao, LDK's Vice President and Chief Accounting Officer, who reports to Jack Lai, Executive Vice President and Chief Financial Officer. In response to the allegations and in accordance with instructions of the board of directors, LDK's management team and board of directors formed an internal committee to investigate the allegations and conduct an immediate

- 19 –

physical inventory of LDK's polysilicon materials. The management team found no material discrepancies as compared to LDK's financial statements. The management team believes that these allegations have no merit. Additionally, the Audit Committee has asked an independent auditing firm to conduct a separate, independent engagement on LDK's inventory. These findings are expected to be disclosed after the completion of the review and consideration of the Audit Committee. LDK has not been contacted by any regulatory authority regarding this matter.

62.     However, later that same day, Piper Jaffray issued a comment which

stated:

Today LDK issued a statement that its financial controller was released for cause on 9/25 and an internal committee found no material discrepancies and that the allegations are without merit. Additionally, its Audit Committee has asked an independent auditing firm to conduct a review**. On 10/4 LDK management conducted an investor call through a competitor. LDK management did confirm that the financial controller raised concern via email prior to his departure from the company. While the company defends its financials and inventory, we believe the investor call may have raised more questions then it answered. Also the CEO was not on the call.**

(Emphasis original.)

63.     At the time that its May 2007 Registration Statement went effective, LDK

did not have sufficient evidence to support its statements regarding its polysilicon

inventory levels.  As a result, the following statements from the June 2004 Registration

Statement have been rendered materially false:

- As of March 31, 2007, we had an annual multicrystalline wafer production capacity of approximately 215 megawatts, or MW.

- We intend to continue to increase our annual production capacity to approximately 400 MW by the end of 2007 and approximately 800 MW by the end of 2008.

- Despite the current industry-wide shortage of polysilicon, we have inventory and commitments from suppliers that we believe will satisfy over 90% of our estimated requirements through the end of 2007.

I:\LDKSolarCo\Pleadings\Complaint.doc

64.     The above statements were materially false at the time they were made because there were discrepancies between the Company's announced and actual polysilicon inventory levels which called into question the Company's ability to manufacture multicrystalline solar wafers.

## SECURITIES ACT COUNTS

### Count I
### Violation of Section 11 of the Securities Act
### Against the Securities Act Defendants

65.     Plaintiff repeats and realleges each and every allegation contained above.

66.     This claim is brought by Plaintiff who obtained LDK stock pursuant to the Registration Statement on behalf of itself and other members of the Class.  Each Class member acquired their shares pursuant to or traceable to, and in reliance on, the Registration Statement.  This claim is based upon principles of strict liability and negligence only.

67.     Individual Defendants Peng, Tong, Zhu, Shao, Wang, Lai and Yao as signatories of the Registration Statement, as directors and/or officers of LDK and controlling persons of the issuer, owed to the holders of the stock obtained through the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and the Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.  Defendants Peng, Tong, Zhu, Shao, Wang, Lai and Yao knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement

as set forth herein.  As such, Individual Defendants Peng, Tong, Zhu, Shao, Wang, Lai and Yao are liable to the Class.

68.     None of the Securities Act Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

69.     The Securities Act Defendants issued and disseminated, caused to be issued or disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each Securities Act Defendant violated and/or controlled a person who violated § 11 of the Securities Act.

70.     As a direct and proximate result of the Securities Act Defendants' acts and omissions in violation of the Securities Act, the market price of LDK stock was artificially inflated and Plaintiff and the Class suffered substantial damage in connection with their purchase of LDK common stock pursuant to the Registration Statement.

71.     LDK is the issuer of the stock sold via the Registration Statement as issuer of the stock, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

72.     At the times they obtained their shares of LDK, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein, and sustained damage as a result.   Plaintiff and other

members of the Class could not have reasonable discovered the nature of the Securities Act Defendants' misstatements or omissions.

73.    In connection with the IPO, the Securities Act Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce and the U.S. mails.

74.    This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement.

75.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under § 11 of the Securities Act, as measured by the provisions of § 11(e), from the Securities Act Defendants and each of them, jointly and severally.

**Count II**
**Violation of Section 12(a)(2) of the Securities Act Against Defendant LDK**

76.    Plaintiff repeats and realleges each and every allegation contained above.

77.    This claim is brought pursuant to § 12(a)(2) of the Securities Act on behalf of all purchasers of LDK common stock pursuant to, or traceable to, the IPO.

78.    Defendant LDK was an offer or seller of a security, specifically LDK common stock sold in the IPO.

79.    By means of the IPO Prospectus, Defendant LDK offered and sold shares of the Company's common stock to Plaintiff and/or other members of the Class.

80.    The actions of solicitations taken by Defendant LDK included participation in the preparation and dissemination of the false and misleading Registration Statement.  Additionally, Defendant LDK participated in the acts detailed as follows:

a.  Defendant LDK made the decision to conduct the IPO, to do it at the selected offering price and to make the sale in the United States.  They actively and jointly drafted, revised, and approved the IPO Prospectus and other written selling materials by which the IPO was made to the investing public.  These written materials were "selling documents" and calculated by the Defendants to create interest in the common stock offered and were widely distributed by the Defendants for that purpose;

b.  Defendant LDK finalized the IPO Prospectus and/or caused it to become effective. But for LDK having signed and/or drafted the IPO Prospectus, the IPO could not have been made; and

c.  Defendant LDK conceived and planned the IPO and together, jointly orchestrated all activities necessary to effect the sale of these common stock to the investing public by issuing the common stock, promoting the common stock, and supervising the distribution and ultimate sale to the investing public.

81.    The LDK common stock offered and sold in the IPO by Defendant LDK was offered and sold through the use of interstate communication, the use of interstate commerce, and the use of the mails.

82.    The LDK common stock offered and sold through the use of the IPO Prospectus, which contained untrue statements of material fact or omitted to state material facts necessary in order to make the statements made not misleading.

83.    Defendant LDK was obligated to make a reasonable and diligent investigation of the written statements made in the IPO prospectus to ensure that such

statements were true and that there was no omission to state a material fact required to be stated in order to make the statement contained therein not misleading.

84.     Plaintiff and other members of the Class purchased LDK commons tock pursuant to, or traceable to, the defective IPO Prospectus.  Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the IPO Prospectus.

85.     Those plaintiffs who continued to own LDK common stock offer to tender their holdings in return for the consideration paid for the common stock together with interest thereon.

86.     By reason of the conduct alleged herein, Defendant LDK violated § 12(a)(2) of the Securities Act.  As a direct and proximate result of the Defendant LDK's conduct, Plaintiff and the other members of the Class suffered substantial damage in connection with the purchase of the common stock pursuant to, or traceable to the IPO Prospectus.

**Count III – Violation of Section 15 of the Securities Act<br>
Against Defendants Peng and Tong**

87.     Plaintiff repeats and realleges each and every allegation contained above.

88.     This claim is asserted against Defendants Peng and Tong and is based upon § 15 of the Securities Act.  This claim is based upon the principles of strict liability and negligence only.

89.     Defendants Peng and Tong, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, a controlling person of LDK within the meaning of § 15 of the Securities Act.  Individual

Defendants Peng and Tong had the power and influence and exercised same to cause LDK to engage in the acts described herein.

90.    By virtue of the conduct alleged herein, Individual Defendants Peng and Tong are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## EXCHANGE ACT CLAIMS

### Count I – Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Exchange Act Defendants

91.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

92.    During the Class Period, the Exchange Act Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of LDK's common stock; and (iii) cause Plaintiff and other members of the Class to purchase LDK common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

93.    The Exchange Act Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for LDK common stock in violation of Section 10(b) of the Exchange Act

- 26 –

and Rule 10b-5 promulgated thereunder.  All of the Exchange Act Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons alleged below.

94.    In addition to the duties of full disclosure imposed on the Exchange Act Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, the Exchange Act Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. §§ 210.01 *et seq.*) and Regulation S-K (17 C.F.R. §§ 229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's common stock would be based on truthful, complete and accurate information.

95.    The Exchange Act Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of LDK as specified herein.

96.    These Exchange Act Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of LDK's value and performance, and continued substantial growth, which included the making of, or the participating in the making of, untrue statements of

material facts and omitting to state material facts necessary in order to make the statements made about LDK and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of LDK common stock during the Class Period.

97.     Each of the Individual Defendants' primary liability, and control person liability, arises from the following facts: (i) during the Class Period, the Individual Defendants were high level executives and directors at the Company and members of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Exchange Act Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded as materially false and misleading.

98.     The Exchange Act Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts,

even though such facts were available to them. Such Exchange Act Defendants' material misrepresentation and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing LDK's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by the Exchange Act Defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, the Exchange Act Defendants if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discovery whether those statements were false or misleading.

99.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of LDK common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of LDK's publicly-traded common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Exchange Act Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by the Exchange Act Defendants during the Class Period, Plaintiffs and the other members of the Class acquired LDK common stock during the Class Period at artificially high prices and were damaged thereby.

100.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had

Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that LDK was experiencing, which were not disclosed by the Exchange Act Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their LDK common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

101.    By virtue of the foregoing, the Exchange Act Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

102.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

### Count II – Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

103.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

104.    The Individual Defendants acted as controlling persons of LDK within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participating in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and

misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

105.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

106.    As set forth above, Defendant LDK and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are also liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(i).    Determining that this action is a proper class action, and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(ii).    Awarding compensatory damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a

result of the Defendants wrongdoing, in an amount to be proven at trial, including interest thereon;

(iii).    Awarding Plaintiff and the other members of the Class their reasonable costs and expenses incurred in this action, including allowance of fees for Plaintiff's attorneys and experts; and

(iv).    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 9, 2007                    Respectfully submitted,


_____s/William B. Federman_____
William B. Federman, # WBF9124
FEDERMAN & SHERWOOD
10205 N. Pennsylvania
Oklahoma City, OK 73120
(405) 235-1560/FAX: (405)239-2112
wfederman@aol.com

I:\LDKSolarCo\Pleadings\Complaint.doc

Plaintiffs Certification of Investment of
LDK SOLAR CO., LTD. [NYSE: LDK]

I, _CHESTER TSANG_, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.    I have reviewed the Complaint in this action and authorize the filing of this Certification.

2.    If chosen, I am willing to serve as a representative party on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial if necessary. I am willing to participate on an executive committee of shareholders.

3.    Plaintiff's transaction in LDK Solar Co., Ltd. [NYSE: LDK] security that is the subject of this action is:

| NO. SHARES PURCHASED | DATE PURCHASED | PRICE PER SHARE | IF SOLD, # OF SHARES SOLD | DATE SOLD (if applicable) |
|---|---|---|---|---|
| 11,000 | 9/27/2007 | $75.50 | 11,000 | 10/3/2007 |
|  |  |  |  |  |
|  |  |  |  |  |

(continue on blank piece of paper, if necessary)

4.    I did not purchase these securities at the direction of my counsel, or in order to participate in a lawsuit under the Securities Exchange Act of 1934.

5.    During the three-year period preceding the date of the Certification, I have not sought to serve, nor have I served, as a representative to any party or on behalf of any class in any action arising under the Securities Exchange Act of 1934.

6.    I will not accept any payment if chosen to serve as a representative party on behalf of the Class beyond my pro rata share of an award to the Class, or as otherwise ordered and approved by the Court.

_____        ████████████████████████
Signature                                              Address

CHESTER TSANG                            ████████████████████████
Name    (please print)                              City

_____        State: _____ Zip: _____
Telephone Number

████████████████████        ████████████████████████
'Cell Number                                      E-Mail Address

Signed under penalty of perjury, this __4__ day of __10_____, 2007.

Return to:
William B. Federman
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560/Fax (405) 239-2112
Email: wfederman@aol.com
Website: www.federmanlaw.com